**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STARDOCK SYSTEMS, INC.,
a Michigan Corporation,

      Plaintiff,

v.

ALEXANDRA MISETA,
an individual,

      Defendant.

Case No. 2:12-cv-13345
Hon. Patrick J. Duggan
Magistrate Judge R. Steven Whalen

---

**DEFENDANT'S <u>REPLY</u> TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, TO COMPEL BINDING ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT (FAA), 9 USC 1 et seq.**

---

Defendant, Alexandra Miseta, for her Reply to Plaintiff's Response to Motion for Summary Judgment, or in the alternative, to Compel Binding Arbitration, states as follows:

**I.    A CONTRACT WAS FORMED WHEN MS. MISETA ACCEPTED THE BILATERAL ARBITRATION TERMS OFFERED BY STARDOCK; THE FACT STARDOCK DID NOT SIGN IS IRRELEVANAT AND A RED-HERRING**

Stardock's lead argument is that the terms of arbitration set forth in the Receipt and Understanding and Sections 7.06 and 7.07 do not apply to it because Stardock did not sign the Receipt and Understanding.  Stardock does not cite to any law in support of its position; most likely because there is no legal support for its position.

In fact, it is well settled that "[T]he essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." (*Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989).)  "Before a contract can be completed, there must be an offer and acceptance.  Unless an acceptance is unambiguous

1

and in strict conformance with the offer, no contract is formed." (*Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 213 Mich.App. 636, 640 (1995).) In general, a contract need not be in writing or signed to be enforceable. (*Hamilton Foundry & Mach. Co. v. Int'l Molders & Foundry Workers Union of N. Am.*, 193 F.2d 209, 213-14 (6th Cir. 1951).) The key question is the intent of the parties, i.e., did the parties intend the contract would only be binding if signed? (*Id.*)

Here, the obvious answer is that Stardock's signature to the contract was not required. If it was required to form a binding contract, then Ms. Miseta's claims against Stardock were not required to be brought in AAA arbitration. However, Stardock has argue just the opposite, namely, that there was an agreement between the parties that required Ms. Miseta's claims to be brought in arbitration.

Further, there is no dispute that Stardock offered to Ms. Miseta the terms of the arbitration contract that were set forth in the Receipt and Understanding, which expressly incorporated from the Employee Handbook Sections 7.06 and 7.07. According to the terms of Stardock's offer, Ms. Miseta's employment at Stardock was contingent upon accepting these terms by signing the Receipt and Understanding. In contrast, Stardock's offer does not require that Stardock sign anywhere for the contract to be consummated. Stardock's argument that it is not bound by the arbitration contract because it did not sign the contract is without merit and a red-herring.

## II.   THE ARBITRATION CONTRACT IS CLEAR AND UNAMBIGUOUS: IT IS NOT LIMITED TO CLAIMS BROUGHT BY MS. MISETA, OR LIMITED TO CLAIMS ARISING OUT OF EMPLOYMENT DISCRIMINATION

Stardock's argument that the arbitration contract, and specifically Section 7.06, applies strictly to employment discrimination claims brought by Miseta is without merit. The clear and

2

unambiguous terms offered by Stardock, and accepted by Ms. Miseta, require Stardock to arbitrate its current claims.   Stardock's arguments to the contrary require an unnatural and tortured reading of the contractual language.

More specifically, it is without question that Sections 7.06 and 7.07 are part of the arbitration contract assented to by both Stardock and Ms. Miseta.   Stardock's offer of arbitration contract expressly included Sections 7.06 and 7.07 of the Employee Manual.   Ms. Miseta accepted these terms when she signed the Receipt and Understanding.   Nothing in the Receipt and Understanding limits in any way the terms of Sections 7.06 and 7.07, let alone limits their applicability to claims by Ms. Miseta.   Section 7.06 applies to Stardock the same as it applies to Ms. Miseta.

Clearly, the first sentence of Section 7.06 begins with: "Any and all causes of action, claims, dispute and controversies for monetary damages . . . ."   Thus, that part of the sentence establishes the arbitration contract applies to any action at law, and excludes only actions in equity.   The first sentence then continues with: "and/or . . . ."   "And/or" is a conjunction that means either or both can apply.   The placement of the "and/or" conjunction separates as standing alone the expansive scope of subject matter set forth in the beginning of the first sentence (any and all causes of action, etc.) from the next portion of the first sentence of Section 7.06 pertaining to ". . . employment related matters, including, but not limited to, any and all claims related to termination of employment and discrimination against Stardock and/or its affiliates,".

After the comma, the first sentence concludes with "shall be arbitrated pursuant to the procedures and rules of the AAA."   The placement of the comma after "against Stardock and/or its affiliates," separates the language "shall be arbitrated" from the language before the comma, which establishes that both "any and all claims" and employment claims shall be arbitrated.   The

language "against Stardock and/or its affiliates" is not a limitation of the "any and all causes of action" set forth in the beginning of the sentence before the "and/or" conjunction, but instead an example of the type of claim that is also subject to arbitration.

Had Stardock intended to offer an arbitration contract that restricted arbitration of "any and all claims" it would have appended to the "any and all claims" portion of the first sentence before the conjunction the term "against Stardock and/or its affiliates." Instead, Stardock reserved the language "against Stardock and/or its affiliates" to claims arising out of "termination of employment and discrimination." The terms of the arbitration contract Stardock offered Ms. Miseta apply equally to "any and all causes of action" as they do to employment claims brought against Stardock.

Likewise, Section 7.06 also requires that Stardock arbitrate "any and all causes of action." After the first sentence of Section 7.06 establishes that any and all actions at law must be arbitrated, the second sentence of Section 7.06 then describes and limits how Stardock can initiate an arbitration claim. This language is evidence that Stardock intended to have its claims subject to arbitration when it offered these terms to Ms. Miseta. Not surprisingly, Stardock submitted its claims (entitled "Counter-Claims") to AAA arbitration and proceeded with arbitration for 16 months. Stardock's post contract-formation conduct evidences it intended to be bound by the arbitration agreement set forth in Section 7.06.

III.   **THE FACT STARDOCK ARBITRATED ITS CLAIMS FOR 16 MONTHS IS EVIDENCE THE PARTIES' INTENTION WAS FOR THE ARBITRATION CLAUSE TO APPLY TO STARDOCK'S CLAIMS**

The terms of the arbitration contract evidenced by the Receipt and Understanding and Sections 7.06 and 7.07 are clear and unambiguous. However, to the extent the Court finds

4

ambiguity and looks to extrinsic evidence, summary judgment is still appropriate.   Thus,

Stardock was required to timely arbitrate its claims and Ms. Miseta's Motion should be granted.

In contracts, ambiguity exists "if the language is susceptible to two or more reasonable

interpretations." (*City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir.2001).)

When a contract is ambiguous, extrinsic evidence can be used to determine the intent of the

parties. (*Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421-22

(6th Cir. 2008).)   The question of whether there is a binding arbitration, and the scope thereof, is

a matter for the Court to decide.

> "The cardinal rule in the interpretation of contracts is to ascertain the intention of
> the parties." [Citations omitted.]   "To ascertain the arbitrability of an issue, [a]
> court must consider whether there is an arbitration provision in the parties'
> contract, whether the disputed issue is arguably within the arbitration clause, and
> whether the dispute is expressly exempt from arbitration by the terms of the
> contract." [Citations omitted.]   **The court should resolve all conflicts in favor
> of arbitration**.   [Citations omitted.][Emphasis added]." (*Fromm v. Meemic Ins.
> Co.*, 264 Mich. App. 302, 305-06 (2004).)

It is also well-settled in the 6th Circuit that summary judgment is available even when the

court relies on extrinsic evidence to aid in contract interpretation. (*Royal Ins. Co. of Am. v.

Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008).)   Finally, ambiguities in

contracts should be construed against the drafter. "If a fair reading of the entire contract of

insurance leads one to understand that there is coverage under particular circumstances and

another fair reading of it leads one to understand there is no coverage under the same

circumstances[,] the contract is ambiguous and should be construed against its drafter...." (*Royal

Ins. Co. of Am., supra*, 525 F.3d at 423.)

Stardock's behavior clearly evidences its intention to have its claims bound by the

arbitration contract it offered to Ms. Miseta.   In accordance with this intention, Stardock filed its

claims with the AAA, and then prosecuted those claims in arbitration for 16 months.   During

those 16 months, Stardock served multiple sets of written discovery that covered its counterclaims. Stardock's CEO Brad Wardell, as well as other Stardock employees, were deposed for a couple hours exclusively regarding Stardock's counterclaims, and Stardock's counsel deposed Ms. Miseta for hours regarding Stardock's counterclaims. Stardock's argument it has not prosecuted its claims is preposterous, and nothing more than a subterfuge to divert the Court's attention from its brazen forum shopping. Ms. Miseta's counsel will provide to this Court at the hearing and/or under the directive of seal (so as to not violate any Protective Orders related to such documents), all of the discovery that took place in litigating Stardock's claims in the arbitration.

## IV.   STARDOCK SHOULD BE ORDERED UNDER RULE 41 TO PAY MS. MISETA'S COSTS RELATING TO THE 16 MONTH ARBITRATION OF STARDOCK'S IDENTICAL COUNTERCLAIMS

In the alternative, if the Court denies this Motion for Summary Judgment, then Ms. Miseta respectfully requests the Court order Stardock pay her costs incurred prosecuting the counterclaims in arbitration. Stardock's actions amount to forum shopping. Forum shopping is a sanctionable offense under the Federal Rules. Federal Rule of Civil Procedure 41d provides:

**(d) Costs of a Previously Dismissed Action.** If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

> (1) may order the plaintiff to pay all or part of the costs of that previous action; and

> (2) may stay the proceedings until the plaintiff has complied.

Rule 41(d) seeks to prevent forum shopping, "especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else." Further, Rule 41(d) is intended to prevent attempts to "gain any tactical advantage by dismissing and refiling th[e] suit." (*Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir.2000) (citations omitted).)

In *Volunteer Energy Services, Inc. v. Option Energy, LLC*, 1:11-CV-554, 2011 WL 3268653 (W.D. Mich. July 29, 2011), the court determined that Plaintiff's obvious forum-shopping required the imposition of costs. (*Id.*)

> Plaintiff's dismissal of its state court action after denial of its motion for preliminary injunction, and its refiling of the same action in this court is a clear case of forum shopping. Therefore, the Court will require Plaintiff to pay all of the costs incurred by Defendants in defending the previous action that Plaintiff intentionally aborted before coming to federal court. (*Id.*)

Stardock's actions of dismissing its counter claim in arbitration after losing its dispositive motions and then re-filing the same claims in this Court are on all fours with the actions of the plaintiff in *Volunteer Energy Services*. In its Response, Stardock has admitted to forum shopping when it stated: "[H]owever, when [Stardock's] Motions for Summary Disposition were denied, it became apparent that the two cases were going to trial and arbitration hearings. Plaintiff then made the decision to file its . . . claims against [Ms. Miseta] separately . . . ." (Resp. at pg. 7, ¶1.) Stardock then further admits its decision to forum shop was made because it did not want to proceed in front of the arbitrator. (*Id.*) Further evidence of Stardock's forum-shopping is that Stardock had no objection to its claims being heard in AAA arbitration or to the qualifications of the arbitrator during the entire 16 months it prosecuted its counter claims . . . until the arbitrator denied its motion for summary judgment. Stardock should be sanctioned for its blatant forum-shopping.

## V.   CONCLUSION

For the above-stated reasons, as well as for the reasons set forth in the Motion for Summary Judgment, Defendant Alexandra Miseta respectfully requests this Court grant her Motion for Summary Judgment.

Respectfully submitted,

/s/ Thomas R. Warnicke
Thomas R. Warnicke (P47148)
Attorney for Defendant
Law Offices of Thomas R. Warnicke, PLLC
30903 Northwestern Hwy, Suite 250
Farmington Hills, MI 48334
(248) 930-4411
tom@warnicke.com

Dated: February 21, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February, 2013, the foregoing paper was served upon all counsel of record in this matter, via the Court's electronic filing system. I declare the above statements to be true to the best of my information, knowledge and belief.

/s/ Thomas R. Warnicke
Attorney for Plaintiff