UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STARDOCK SYSTEMS, INC.,

    Plaintiff,                                                            Case No. 12-13345

v.                                                                                    Hon. Patrick J. Duggan

ALEXANDRA MISETA,

    Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION

This action comes before the Court as yet another component of a protracted legal conflict between the parties. Defendant Alexandra Miseta, a former employee of Plaintiff Stardock Systems, Inc., entered into an arbitration agreement with Stardock as a condition of employment. Presently before the Court is Miseta's Motion for Summary Judgment, or in the Alternative, Motion to Compel Arbitration. At issue is whether the arbitration agreement and claims limitation provision in that agreement apply to claims Stardock has against Miseta. Having determined that that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated herein, the Court denies Miseta's Motion.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Miseta worked as a marketing manager at Stardock from June 2007 until August 3, 2010. (Compl. ¶¶ 6-7, 9; Def.'s Br. 1.) On September 17, 2008, Miseta signed a "Receipt and Understanding by Employee" (hereinafter "Receipt"). (Receipt, Pl.'s Mot.

Ex. 1.)  The Receipt reiterates language from the Employee Handbook indicating "that the Handbook is not a contract of employment, express or implied, between me and the Company and that I should not view it as such."  (*Id.* ¶ 2; Employee Handbook Section 1.02 Disclaimer, Pl.'s Resp. Ex. 3; Receipt, Pl.'s Resp. Ex. 1, at ¶ 2.)  Rather, the "Handbook . . . represents guidelines only (even though the Handbook might refer to guidelines as policies or procedures) and that the Company reserves the right to modify the Handbook or amend or terminate any policies, procedures, [or] guidelines . . . at any time[.]"  (Receipt, Pl.'s Mot. Ex. 1, at ¶ 1.)  The Receipt further provides:

> Notwithstanding anything to the contrary and as a condition of employment, I do expressly agree to submit all claims, causes of action against, and all disputes and controversies with, Stardock exclusive to mandatory binding arbitration, and I shall be bound by the specific dispute resolution procedures, the mandatory and binding arbitration provisions, and the claims limitation provision and waiver set forth in Section 7.06 and Section 7.07 of Stardock's Employee Handbook.

(*Id.* ¶ 4.)  As mentioned previously, Miseta's employment relationship with Stardock terminated on August 3, 2010.

Miseta claims that she was constructively discharged from Stardock as a result of a hostile work environment and sexual harassment perpetrated by Stardock CEO Brad Wardell.  (Def.'s Br. 1; Def.'s Mot. Ex. 1.)  As a result of these alleged legal transgressions, Miseta filed a complaint against Wardell in his individual capacity in Wayne County Circuit Court (the "Wayne County Litigation") on December 30, 2010,[1] alleging violations of Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq*.  (Def.'s Br. 2; Complaint, Def.'s Mot. Ex. 3.)  Soon thereafter, on

---

[1] Case No. 10-015178-CD.

January 3, 2011, Miseta filed a written demand for arbitration with the American Arbitration Association ("AAA") to pursue her claims against Stardock (the "Arbitration"). (Arbitration Demand, Def.'s Mot. Ex. 4.) In mid-February 2011, Stardock filed its Answer and Counterclaims in the Arbitration. (Answer, Def.'s Mot. Ex. 5.) The following counterclaims were asserted against Miseta: (1) Count I: Breach of Contract; (2) Count II: Breach of Fiduciary Duty; and (3) Count III: Conversion. (*Id.*)

In May 2011, Stardock CEO Wardell sought to compel arbitration with respect to Miseta's claims against Wardell in the Wayne County Litigation. (Stardock's Mot., Def.'s Mot. Ex. 7.) The judge denied Wardell's motion, (6/24/2011 Mot. Hrg. Tr., Def.'s Mot. Ex. 9, at 20:24-25), and the Michigan Court of Appeals denied Wardell's application for leave to appeal, (3/2/2012 Order, Def.'s Mot. Ex. 10). As a result of these rulings, Miseta's claims against Stardock and Wardell have proceeded in parallel proceedings.

A scheduling order from the Wayne County Litigation indicates that "discovery shall run through the case evaluation date[,]" which was set to occur in May 2012. (1/13/2012 Order, Def.'s Mot. Ex. 11.) Apparently, the parties agreed that the discovery period in the Arbitration would run concurrently with that of the Wayne County Litigation. (Def.'s Br. 4.) The parties dispute whether discovery has been taken with respect to Stardock's counterclaims in the Arbitration. (Pl.'s Resp. 6, 7; Def.'s Reply 6.)

In July 2012, roughly sixteen months into the Wayne County Litigation and Arbitration and after the discovery period for both expired, Stardock informed Miseta's counsel of its plan to voluntarily dismiss all of the counterclaims in Arbitration. (Def.'s

3

Br. in Supp. 4.) On August 1, 2012, Stardock filed a Notice of Dismissal Without Prejudice with the AAA, and served Miseta's counsel. (Def.'s Mot. Ex. 15.) Two days before filing the Notice of Dismissal, Stardock initiated the instant action. (Compl.) The Complaint alleges five counts, all of which but the first were the counterclaims alleged in Arbitration: (1) Count I: Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5); (2) Count II: Common Law Conversion; (3) Count III: Statutory Conversion; (4) Count IV: Breach of Fiduciary Duty; and (5) Count V: Breach of Contract. (*Id.*)

Miseta filed the instant Motion for Summary Judgment, or in the Alternative, Motion to Compel Arbitration on January 21, 2013. Stardock responded to Miseta's Motion on February 8, 2013, and Miseta filed a reply on February 21, 2013.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) (explaining that the initial burden of proving the absence of a genuine dispute rests with the movant). A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)). While this inquiry requires the Court to

construe factual disputes, and the inferences there from, in the light most favorable to the non-moving party, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

**B.     Compelling Arbitration**

In rendering a decision on a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, a court "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties[,] and that the specific dispute falls within the substantive scope of the agreement[,]" *Mazera v. Varsity Ford Mgmt. Servs., L.L.C.*, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting *Landis v. Pinnacle Eye Care, L.L.C.*, 53 F.3d 559, 561 (6th Cir. 2008)).

Courts in the Sixth Circuit "examine[] arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983) (interpreting the FAA as establishing that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). "However, countervailing principles also apply," *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007), as "the federal policy in favor of arbitration is not an absolute one[.]" *Higley*, 445 F.3d at 863. Rather, "[a]rbitration under the [FAA] is 'a matter of consent, not coercion.'" *Higley*, 445 F.3d at 863 (quoting

5

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989)). Thus, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 769 (2002) (internal citation omitted). In sum, "no matter how strong [sic] the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (internal citations omitted).

### III. ANALYSIS

As a preliminary matter, the Court finds it proper to briefly discuss the agreement at issue in this case. The operative contract on which the parties center their arguments is the Receipt, the pertinent terms of which are laid out in the "Factual and Procedural Background" section of this Opinion and Order. (Receipt, Pl.'s Mot. Ex. 1.) Stardock's repeated assertions that the Receipt constitutes the operative agreement are correct, as is its contention that the Employee Handbook is not a contract.[2] However, because the Receipt explicitly incorporates two sections of the Handbook – Section 7.06 "Binding Arbitration" and Section 7.07 "Claims Limitation" – these sections are part of the

---

[2] The Employee Handbook and Receipt both clearly state that the Employee Handbook is not a contract. (Employee Handbook Section 1.02 Disclaimer, Pl.'s Resp. Ex. 3; Receipt, Pl.'s Resp. Ex. 1, at ¶ 2.)

6

contract. (*Id.* at ¶ 4.[3]) Thus, the underlying issue in this case is not what the terms of the contract are, but rather, is which parties are bound by the Receipt and Sections 7.06 and 7.07.[4]

### A. Miseta Fails to Demonstrate that Stardock's Claims are Untimely

Miseta argues that "[p]ursuant to a written 'Binding Arbitration' provision in [] Stardock's Employee Handbook, the parties were required to bring any claims against each other within six (6) months from the date on which any claims arose." (Def.'s Br. 1.) In light of Stardock's failure to abide by the contractual six-month limitations period incorporated into the arbitration agreement, Stardock's claims are untimely and Miseta is entitled to judgment as a matter of law. (*Id.*) Miseta's Brief engages in a lengthy discussion of the propriety of contractual statutory limitations periods and concludes that the Court must enforce the six-month limitations period here because the plain language of the contract mandates such a result. (*Id.* at 6-9.) Stardock, on the other hand, contends that the plain language of the limitations clause applies only to employees and that it is

---

[3] This paragraph provides:

> Notwithstanding anything to the contrary and as a condition of employment, I do expressly agree to submit all claims, causes of action against, and all disputes and controversies with, Stardock exclusive to mandatory binding arbitration, and I shall be bound by the specific dispute resolution procedures, the mandatory and binding arbitration provisions, and the claims limitation provision and waiver set forth in Section 7.06 and Section 7.07 of Stardock's Employee Handbook.

(Receipt, Pl.'s Mot. Ex. 1, at ¶ 4.)

[4] The Court notes that Miseta has not argued that the arbitration agreement is invalid for reasons such as lack of mutuality of obligation or lack of consideration.

7

therefore not required to initiate claims against Miseta within the six-month period. (Pl.'s Resp. 11-12.) The Court finds Stardock's interpretation persuasive.

An agreement to arbitrate is a contract and, as elsewhere, the "fundamental goal of contract interpretation" in Michigan "is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement." *Dobbleaere v. Auto-Owners Ins. Co.*, 275 Mich. App. 527, 529, 740 N.W.2d 503, 505 (2007) (citation omitted). The Michigan Supreme Court has explained that an "unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470, 703 N.W.2d 23, 31 (2005).

As discussed above, Section 7.07 of Stardock's Employee Handbook, entitled "Claims Limitation," was incorporated by reference into the parties' contract. It provides:

> Any and all causes of action, claims, disputes and controversies arising out of or in any way related to the employment relationship between Stardock and an employee, including, without limitation, claims for wrongful termination and discrimination, shall not be brought, filed, made or prosecuted by or on behalf of an employee unless such claim is commenced within six (6) months from the date on which the claim arises. . . .

(Employee Handbook Section 7.07 Claims Limitation, Pl.'s Resp. Ex. 3 (capital lettering removed).) The plain language of this provision supports Stardock's position. First, the excerpted portion above refers to "all causes of action, claims, disputes and controversies . . . brought, filed, made or prosecuted *by or on behalf of an employee*[.]" (*Id.* (emphasis added).) Second, the provision goes on to indicate that "[t]he *failure of an employee* to

8

commence arbitration proceedings for any such claims within the aforementioned six (6) month period shall result in the extinguishment and *loss of any and all rights the employee may have to proceed with such claim(s).*" (*Id.* (emphasis added).)  Lastly, the limitations provision explains that an employee's signature on the Receipt "shall be deemed the knowing and voluntary waiver by [sic] the applicable statute of limitations on all claims[ and construed as assenting] to the six (6) month limitation period set forth above[.]" (*Id.*)  Furthermore, in signing the Receipt, Miseta agreed that "I shall be bound by . . . the claims limitations provision and waiver set forth in . . . Section 7.07 of Stardock's Employee Handbook." (Receipt, Pl.'s Mot. Ex. 1, at ¶ 4.)  In sum, the plain language of the agreement contains no reciprocal language binding Stardock to the six-month limitations period.  The Court must enforce the language as written.  *Rory*, 473 Mich. at 470, 703 N.W.2d at 31.  The terms of the limitations provision do not bind Stardock and as such, Stardock's claims are timely.

For the reasons above, Miseta's Motion for Summary Judgment is denied.

**B.      Miseta Fails to Demonstrate that Stardock's Claims Must be Submitted to Arbitration**

The parties do not dispute that a valid arbitration agreement exists.  As such, the Court need not "determine whether . . . a valid agreement to arbitrate exists between the parties[.]" *Mazera*, 565 F.3d at 1001 (quotation omitted).  The parties do, however, disagree as to whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quotation omitted).  Specifically, the parties take divergent positions on who is bound by the arbitration agreement.  Miseta argues that the Court should compel

9

arbitration because "[t]he clear and unambiguous terms offered by Stardock . . . require Stardock to arbitrate its current claims." (Def.'s Reply 2-3; Def.'s Br. 12 (explaining that Miseta is "simply seeking this Court's enforcement of the terms of Stardock's own arbitration agreement").) Stardock disputes that it is bound, arguing that "the plain language . . . only mandates arbitration of claims against [Stardock]."[5] (Pl.'s Resp. 11.) In short, the parties have different interpretations of the plain language of the agreement.

"[A]rbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless it has agreed to do so." *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986) (quotation omitted). "While ambiguities in the language of the agreement should be resolved in favor of arbitration," the Supreme Court has explained that courts should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 534 U.S. at 294, 122 S. Ct. at 769 (internal citation omitted). As such, the Court must consider whether, under Michigan law, the parties have agreed to submit this dispute to arbitration.

Under Michigan contract law, the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *See, e.g.*, *Dobbleaere*, 275 Mich. App. at 529, 740 N.W.2d at 505 (explaining that contracts are interpreted "by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement") (citation omitted). In examining the terms of the agreement, the

---

[5] Stardock also argues that arbitration is not required because the dispute "is not an employment related matter." (Pl.'s Resp. 13.) However, because the Court finds that the arbitration agreement does not bind Stardock, the Court need not address this argument.

10

Court "give[s] the contract language its ordinary and natural meaning." *City of Wyandotte v. CONRAIL*, 262 F.3d 581, 585 (6th Cir. 2001) (citation omitted). "Whether or not a contract is ambiguous is a question of law properly determined by the district court." *Id.* (citation omitted). If a court determines that the language is ambiguous, meaning that "it can be reasonably interpreted to support two different positions[,]" a court may look beyond the four corners of the agreement and may construe the ambiguity "against the drafter of the contract." *Higley*, 445 F.3d at 865 (citation omitted).

Here, the language of the Receipt clearly states that the employee "expressly agree[s] to submit all claims, causes of action against, and all disputes and controversies with, Stardock exclusively to mandatory binding arbitration[.]" (Receipt, Pl.'s Mot. Ex. 1, at ¶ 4.) Furthermore, the Receipt further provides that the employee "shall be bound by the specific dispute resolution procedures, the mandatory and binding arbitration provisions, and the claims limitations provision and waiver set forth in Section 7.06 and Section 7.07 of Stardock's Employee Handbook." (*Id.*) Section 7.06, entitled "Binding Arbitration," provides:

> Any and all causes of action, claims, disputes and controversies for monetary damages and/or employment related matters . . . *against* Stardock and/or its affliates, shall be arbitrated pursuant to the procedures and rules of the [AAA].

(Employee Handbook Section 7.06 Binding Arbitration, Pl.'s Resp. Ex. 3 (emphasis added and capital lettering removed).) The Court finds that the contractual language unambiguously imposes a duty to submit claims, disputes, and controversies to

11

arbitration on Miseta only.[6] *But see Bennett v. Cisco Sys., Inc.*, 63 F. App'x 202, 204 (6th Cir. 2003) (rejecting employee's argument that arbitration agreement was unforceable because it only required employee to submit claims against company to arbitration and indicating that use of the word "disputes" in arbitration provision instead of the word "claims[,]" as well as the use of the phrase "'disputes *with* the Company' as opposed to disputes *against* the Company[,] . . . contemplates arbitration of disputes initiated by either party") (emphasis in original). The Court further finds that the lack of reciprocal language imposing any correlative duty on Stardock translates into an unambiguous intent that Stardock not be bound by the arbitration agreement.

Because "a party cannot be required to submit a dispute to arbitration unless it has agreed to do so[,]" *AT&T*, 475 U.S. at 648, 106 S. Ct. at 1418, and the Court finds that Stardock did not agree to submit its disputes with Miseta to arbitration, Miseta's Motion to Compel Arbitration is denied.[7]

---

[6] The Court's finding that the language is unambiguous means that the Court does not address Miseta's argument that the Court may look to extrinsic evidence, particularly to the fact that Stardock's filing and prosecution of counterclaims in the Arbitration for sixteen months, to determine whether Stardock intended to be bound by the arbitration requirement. (Def.'s Reply 4-5). Moreover, the lack of ambiguity precludes Miseta's suggestion that the Court should construe ambiguities against the drafter. (*Id.* at 5.)

[7] Stardock also argues (1) that Miseta waived her right to demand arbitration by not filing a timely written demand with the AAA and (2) that principles of judicial estoppel preclude the Court from granting Miseta's Motion to Compel Arbitration. (Pl.'s Res. 15-16.) However, the Court need not reach the merits of these arguments in light of the Court's determination that Stardock is not bound to arbitrate its claims against Miseta.

## IV.  CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Stardock's Complaint was timely and that Stardock is not bound by the arbitration agreement.[8]

Accordingly,

**IT IS ORDERED** that Defendant Alexandra Miseta's Motion for Summary Judgment, or in the Alternative, Motion to Compel Arbitration is **DENIED**.

Date:  May 8, 2013

                                              s/PATRICK J. DUGGAN
                                              UNITED STATES DISTRICT JUDGE

Copies to:
**Paul P. Asker, Esq.**
**Thomas R. Warnicke, Esq.**

---

[8] Because Miseta has not prevailed on either motion, Federal Rule of Civil Procedure 11 sanctions are wholly inappropriate.  Not only has Miseta failed to demonstrate that Stardock engaged in the conduct prohibited by Rule 11, but the Rule provides procedural requirements that *must* be followed before sanctions can be imposed. Fed. R. Civ. P. 11(c)(1).  One of these requirements is a two-step process set forth in subdivision (c)(1)(A) of the rule, known as the "safe harbor" provision.  This provision requires a party intending to file a motion for sanctions with the court to "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder v. City of Southfield*, 109 F.3d 288, 293-94 (6th Cir. 1997).  This two-step procedure allows the opposing party twenty-one days to withdraw the challenged paper, claim, allegation, etc., and thus avoid Rule 11 sanctions. *Id*. at 294.  Miseta failed to follow this mandatory procedure.